Town of Lexington *vs.* Louisa G. T. Bean & another.

Middlesex.    October 9, 1929. — October 2, 1930.

Present: Rugg, C.J., Pierce, Wait, Sanderson, & Field, JJ.

*Zoning. Municipal Corporations*, By-laws and ordinances. *Constitutional Law*, Police power: zoning by-law. *Equity Jurisdiction*, To enforce zoning by-law. *Equity Pleading and Practice*, Parties.

G. L. c. 40, § 25 *et seq.*, as amended, require no other notice and opportunity for a hearing, preceding the original enactment of a zoning by-law by a town, than are provided by the requirements of warrant and notice of a town meeting.

G. L. c. 40, § 26, does not apply to towns.

*It seems* that the Legislature, in enacting G. L. c. 40, § 25 *et seq.*, and the amendments thereto, considered that a town meeting and the notice thereof required by G. L. c. 39, § 10, are sufficient notice and opportunity for a hearing preceding the original enactment of a zoning by-law by a town, and are the equivalent of the notice and opportunity for a hearing provided in cities by G. L. c. 40, § 26.

The requirements of G. L. c. 40, § 30, as amended, relating to the modification or repeal of a zoning by-law, are not applicable to the original enactment thereof.

G. L. c. 40, § 25 *et seq.*, as amended, are not unconstitutional in that they permit a town to enact a zoning by-law without previous notice or opportunity for a hearing: constitutional requirements are satisfied if adequate opportunity is given after the passage of such a by-law to contest its validity and its application to the property purporting to be affected by it.

One, who in 1923 acquired title to land in a town containing a single dwelling house, a barn, two sheds and a shop, thereafter until 1928 used the shop for the repair of motor vehicles owned by him and used by him in his own business, and occasionally rented portions thereof to other persons for the storage of their motor vehicles. Such persons sometimes made repairs on their vehicles therein at their own expense. In 1924 the town enacted a zoning by-law under G. L. c. 40, § 25 *et seq.*, as amended, and in 1928 enacted certain amendments thereto. In 1928 the owner of the land orally let the shop to a tenant who thereafter used it for a "general automobile repair shop" in which he repaired the automobiles of other persons for pay. Such use of the shop, if not a use existing at the adoption of the original by-law, did not conform to its provisions applicable to that land, or to such provisions as amended. The owner of the land knew of and consented to such use of the shop by the tenant. The by-law made provision for the use of buildings as automobile repair shops in certain other portions of the town. The by-law contained a provision in conformity

to G. L. c. 40, § 29, exempting from its operation uses of buildings existing at the time of its enactment by the town. In a suit in equity thereafter brought by the town against the owner of the land and his tenant to enjoin the defendants from violating the by-law with respect to such use of the shop, it was *held*, that

(1) The defendants were not entitled to question the constitutionality of the by-law for want of notice and an opportunity to be heard previous to its original enactment: the defendant tenant then had no interest in the property; and the defendant owner had notice of the calling of the town meeting at which it was enacted and an opportunity to be heard thereat;

(2) Nothing appearing to show that the restriction of automobile repair shops to certain portions of the town other than that in which the land in question lay was unreasonable, there was no merit in a contention by the defendants that the by-law was invalid because unreasonable in that it so restricted the districts into which the town was divided to particular industries as to exclude certain harmless occupations from the town;

(3) The use of the shop by the defendant tenant was substantially different from the use which the defendant owner had made of it previous to the letting thereof; and such use by the defendant tenant therefore was not exempted from the operation of the by-law as a use existing at the time of its enactment;

(4) In the absence of action by the town under St. 1925, c. 116, § 1, which extended the restrictions authorized to be made by G. L. c. 40, § 25, to "structures and premises," evidence as to the use of the premises in question outside the shop properly was excluded: the only restriction authorized by said § 25 was of "buildings";

(5) In the circumstances, the use of the shop by the defendant tenant was a use by the defendant owner;

(6) Both defendants properly might be enjoined from making such use of the shop.

A town is a proper party plaintiff to a suit in equity to enforce its zoning by-law, even though that by-law authorizes the building inspector to enforce it.

BILL IN EQUITY, filed in the Superior Court on June 12, 1928, and afterwards amended, described in the opinion.

The suit was referred to a master, material facts found by whom are stated in the opinion. An order, for an interlocutory decree confirming the master's report and for a final decree dismissing the bill, was made by *F. T. Hammond,* J., who stated as his reason therefor that the use of the premises by the defendants was not different from the use previous to the passage of the zoning by-law. Such decrees were entered by order of *Greenhalge,* J. The plaintiff appealed from both decrees.

*S. R. Wrightington,* for the plaintiff.

*W. J. Bannan, (J. L. Harvey* with him,) for the defendants.

FIELD, J.   By this suit in equity the town of Lexington seeks to restrain the defendant Bean, the owner of certain premises in said town, and the defendant Perkins, the tenant of a part thereof, from violating the zoning by-law of the town.   The case was referred to a master who filed a report.   An interlocutory decree was entered overruling the plaintiff's exception thereto and confirming the report, and a final decree dismissing the bill with costs.   From these decrees the plaintiff appealed.

Under the zoning by-law of the town, adopted under G. L. c. 40, § 25, at a town meeting held on March 17, 1924, the premises in question were in a residence district, described as an "R. 2" or "two-family dwellings" district. According to its terms it took effect upon publication, May 2, 1924.   By an amendment adopted at a town meeting held June 28, 1928, the district was changed to an "R. 1" or "one-family dwellings" district.   The premises were conveyed to the defendant Bean on November 16, 1923.   The buildings thereon consisted of a single dwelling house, occupied by the defendant Bean and her family, a barn and two sheds, and another building known as the "shop," "about twenty-four by thirty feet; two stories in height with a flat roof."   "March 9, 1928, the defendant Bean orally let to the defendant Perkins the shop at a rent of $20 per month," and thereafter it was used by him for a "general automobile repair shop."   Since he rented it he "has on an average repaired cars of other persons for pay, one a day in this shop."   "When [the defendant] Perkins hired the premises, the defendant Bean knew that he intended to use them for the purposes for which he has used them and consented to the same, and . . . has known of the use . . . [he] has made of the premises."   The use of the shop by the defendant Perkins does not conform to the provisions of the zoning by-laws applicable either to an "R. 1" or an "R. 2" district.

1. The defendants contend that the original by-law was not adopted legally for the reason that sufficient

notice and opportunity for hearing were not given. This contention is unsound.

There was no statutory requirement of notice or opportunity for hearing except the general provision that a town meeting "shall be called in pursuance of a warrant . . . , notice of which shall be given at least seven days before such meeting," and that "No action shall be valid unless the subject matter thereof is contained in the warrant." G. L. c. 39, § 10. This requirement was complied with. The provision of G. L. c. 40, § 26, that no zoning "ordinance shall be enacted . . . in any city until after a public hearing," of which at least thirty days' notice had been given, does not apply to a town. The use of the word "ordinance" and the context generally indicate that the word "city" is used in its strict sense. Moreover, "town" rather than "city" is the generic word which refers both to cities and to towns. G. L. c. 4, § 7, Thirty-fourth. The words "town" and "by-laws" are coupled with the words "city" and "ordinances," respectively, in other sections dealing with zoning regulations when towns as well as cities are intended to be included. See §§ 25, 27, 29 and 30. Obviously a town meeting and the notice thereof were considered the equivalent in a town of the hearing and notice required in a city by § 26. See *Opinion of the Justices*, 234 Mass. 597, 606. G. L. c. 40, § 30, as amended by St. 1922, c. 40 (see now St. 1929, c. 39), providing that "No ordinance or by-law enacted under section twenty-five shall be repealed or modified except after reasonable notice of the proposed repeal or modification and an opportunity to the objectors to be heard thereon" was not applicable to the original passage of zoning by-laws.

There is no valid objection to the by-law on constitutional grounds because of lack of notice and opportunity to be heard. See *Opinion of the Justices, supra*. The defendants can raise this question only as they are affected by the alleged irregularity. See *McGlue* v. *County Commissioners*, 225 Mass. 59, 60, and cases cited. Here they are strangers to the grievance. *Lampasas* v. *Bell*, 180 U. S. 276, 284. The defendant Perkins at the time the

by-law was adopted had no interest in the premises and, consequently, none in the restrictions placed thereon. The defendant Bean was then a registered voter in the town. She had notice of the warrant for the town meeting of March 17, 1924, containing the subject matter of the proposed by-law and opportunity to be heard at that meeting, as well as notice of hearings by committees and opportunity to be heard at such hearings. Moreover, notice and opportunity for hearing prior to the passage of the by-law were not essential to its constitutionality. The by-law was *quasi* legislative in character, passed in the exercise of the police power. *Opinion of the Justices*, 234 Mass. 597, 603–605. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52, 59. *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73, 76. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 387, 397. *Washington* v. *Roberge*, 278 U. S. 116, 120, 121. The constitutional requirements are satisfied if adequate opportunity is given after the passage of such a by-law to contest its validity and its application to the property purporting to be affected by it. See *Salem* v. *Eastern Railroad*, 98 Mass. 431, 443; *Nelson* v. *State Board of Health*, 186 Mass. 330, 333, 334. *Commonwealth* v. *Sisson*, 189 Mass. 247, 253, 254; *Chicago, Burlington & Quincy Railroad* v. *Nebraska*, 170 U. S. 57, 76; *New York Health Department* v. *Rector of Trinity Church*, 145 N. Y. 32, 47. This suit furnishes such an opportunity to these defendants.

2. The defendants contend that the by-law is invalid because unreasonable in that it so restricts the districts into which the town is divided to particular industries as to exclude certain harmless occupations from the town. The by-law, however, does not exclude from the town the use of buildings as automobile repair shops, the use made of the building in question. Such use is provided for specifically in the "C. 1" or "retail stores, offices, etc." districts and "M. 1" or "light manufacturing" districts and no facts are found which indicate that the restriction of such shops to these districts is unreasonable. See *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52, 60; *Spector* v. *Building Inspector of Milton*, 250 Mass. 63, 67.

In the absence of findings the case differs from *Nectow* v. *Cambridge*, 277 U. S. 183. The defendants, therefore, are not affected adversely by the alleged irregularity and cannot attack the validity of the by-law on this ground. *McGlue* v. *County Commissioners, supra. Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526, 530. *Wulfsohn* v. *Burden*, 241 N. Y. 288, 303. Moreover, the by-law, after providing expressly for a large number of uses, authorized the selectmen "in a specific case" to "Permit in any district any use obviously intended, because harmonious, compatible, accessory, or necessary for public convenience, but which has not been specifically mentioned." It will be time enough to consider whether any use of a building is excluded improperly from the town by this by-law when the particular instance is brought to our attention.

3. The prohibition of the use now made of the building is not inapplicable because of the use made of the building at the time of the adoption of the by-law in 1924. G. L. c. 40, § 29, provides that such a by-law shall not apply "to the existing use of any building" at the time of its enactment. The by-law states that "Any building or part of a building which, at the time of the adoption of this by-law, is being put to a non-conforming use" that is, "an existing use . . . which does not conform to the regulations for the district in which such use . . . exists," "may continue to be used for the same purpose or for purposes not substantially different." From the time the defendant Bean acquired title to the premises in 1923, until now, her husband was "in the trucking, furniture moving business, and . . . [had] a general express route running every day to Boston and return from Lexington, but . . . used in his business only auto trucks — no horses." He used the shop, until it was leased to the defendant Perkins in 1928, "as a general repair shop for the repair of his trucks, . . . employed auto mechanics, skilled in auto repairs, for the repair of his own trucks used in his own business in this shop, but not for outsiders for pay . . . ," though he "let to several parties (at time[s], five or six in number) space for the storage of autos" on the

premises, "but never in this shop," and at times "when the shop was not in use or the work going on therein would not be interfered thereby, such parties made repairs on the autos owned by them, at their own expense, in the shop." The use of the shop by the defendant Perkins for the commercial purpose of repairing motor vehicles for hire is "substantially different" from a use of it by a person residing on the premises for the purpose of repairing motor vehicles belonging to him as incidental to his trucking and express business and the occasional permissive use of it by persons storing automobiles on the premises. The use now made of the shop was not an "existing use" of it at the time of the adoption of the by-law, within the meaning of the statute. We do not imply, however, that the use made of the building before the adoption of the by-law was incidental or accessory to the use of the premises for residential purposes in such a sense that as a new use it would be permitted in a residential district. See *Bennett* v. *Inspector of Buildings of Cambridge,* 270 Mass. 436.

4. The defendants' rights were not enlarged by the amendment of the by-law in 1928, after the defendant Perkins began his use of the shop as a general automobile repair shop, when the district was changed from an "R. 2" to an "R. 1" district. The only effect of this amendment was to add to the "buildings and uses" excluded from the district "Two-family dwellings," "Hotels and boarding houses" and "Fire and police stations." The restrictions previously applicable were not repealed, but were continued in force as from the date of the adoption of the original by-law, and the exceptions from these restrictions as "existing use[s]" were to be determined as of that date.

5. Evidence, offered by the plaintiff, of the use of the premises outside the shop was excluded by the master, over the objection of the plaintiff. The only objection to the master's report filed by the plaintiff was based upon this exclusion of evidence, and was overruled by the trial judge. These actions of the master and of the judge were right, as was the consequent confirmation of the

report. The by-law was passed before the amendment of G. L. c. 40, § 25, by St. 1925, c. 116, § 1. The statute then authorized the restriction of "buildings" and their uses only, and the by-law, however phrased, could not be broader in its scope. *Cawley* v. *Northern Waste Co.* 239 Mass. 540, 544. *Inspector of Buildings of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85. Properly construed, the by-law in its application in terms to "buildings and uses" meant buildings and their uses. The extension by St. 1925, c. 116, § 1, of the delegated power of restriction by ordinance or by-law (*Opinion of the Justices,* 234 Mass. 597, 603) to "structures and premises" did not enlarge the scope of a by-law passed previously, in the absence, as here, of action of the town to that end.

6. The town of Lexington cannot be held to be an improper party plaintiff, even in view of § 21 of the zoning law authorizing the building inspector to enforce its provisions. See *Worcester Board of Health* v. *Tupper,* 210 Mass. 378, 383.

7. The use of the shop as a general automobile repair shop, by the defendant Perkins, with the knowledge and consent of the defendant Bean, who had a right to terminate the tenancy (G. L. c. 183, § 3, *Currier* v. *Barker,* 2 Gray, 224, 226), was a use thereof by the defendant Bean which, being in violation of the by-law, may be enjoined. G. L. c. 40, § 28. *Case* v. *Minot,* 158 Mass. 577, 585–587. Compare *Brooks* v. *Rosenbaum,* 217 Mass. 172, 174.

It follows that the interlocutory decree must be affirmed, but the final decree must be reversed and a decree, with costs, entered enjoining both defendants from using the shop as a general automobile repair shop.

*Ordered accordingly.*