BARRON CHEVROLET, INC. vs. TOWN OF DANVERS
& another.[1]

Suffolk. November 8, 1994. - February 6, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Moot Question. Practice, Civil*, Moot case. *Zoning*, Nonconforming use or
structure, Sign, Variance, Special permit, By-law.

An action brought under G. L. c. 240, § 14A, seeking a determination on
the applicability of zoning provisions to a nonconforming use of com-
mercial property, was not rendered moot by an action of the zoning
board of appeals purporting to grant a modification of the variances
that allegedly established the use. [406-407]

Certain commercial signs, erected and maintained pursuant to variances
that regulated only the signs' locations, were otherwise lawful preexist-
ing nonconforming uses and the owners of the signs were not required
to seek a modification of the variances to make changes in the signs,
consistent with the present use, that did not involve changes in location.
[408-409]

Proposed changes to certain commercial signs that were prior nonconform-
ing structures under a municipal zoning by-law were governed by the
provisions of G. L. c. 40A, § 6, and not governed by regulations in a
later zoning amendment, where the proposed changes did not constitute
a change, extension, reconstruction, or alteration of the nonconforming
use. [409-413]

CIVIL ACTION commenced in the Land Court Department
on July 26, 1989.

The case was heard by *Robert V. Cauchon*, J., on a mo-
tion for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Katherine A. Hesse* for the defendants.

[1]Zoning board of appeals of Danvers.

*Edward T. Patten* (*David A. Mills* with him) for the plaintiff.

ABRAMS, J. The plaintiff, Barron Chevrolet, Inc., is an automobile dealership in the town of Danvers (town). On its property, the plaintiff maintains three free-standing signs, erected pursuant to setback variances granted by the Danvers zoning board of appeals (board) in 1969 and 1972. The 1969 variance permitted the erection of two signs closer than the then-existing fifty-foot setback from the street line. The 1972 variance permitted the erection of a third sign within the setback area, but further than thirty feet from the street line. Other than their location on the premises, the signs complied with the local zoning by-laws at the time they were erected. All three signs have been used and maintained continuously from the dates on which they were erected, and each was erected within six months of the allowance of the relevant variance.

In August, 1987, the plaintiff's property was rezoned and placed within the Route 114 Corridor Zone A District, a zone created and governed by § 25 of the town's zoning by-laws. In the new district, only one "identifying" sign is permitted on the property; the area of any free-standing sign is limited to 100 square feet; the street setback is twenty-five feet; and the maximum sign height is twenty feet.[2] The plaintiff's signs do not conform to the new requirements. The plaintiff has three "identifying" signs. Two exceed the height limit and two exceed the sign area limit. The by-law has a "grandfather" clause which permits the maintenance of pre-existing nonconforming signs, but not their alteration.[3]

---

[2]The relevant portion of the bylaw is § 25.7, which provides, in pertinent part: "1. A maximum of one (1) identifying sign shall be allowed for each lot . . . .

" . . .

"4. The area of any free-standing sign shall not exceed one hundred (100) square feet, and shall be set back twenty-five (25) feet from the street line. Maximum sign height is twenty (20) feet. Minimum sign height is six (6) feet."

[3]This clause, § 25.7.12 of the by-law, provides, in relevant part: "Nonconforming signs erected prior to the adoption of this by-law may continue

In May, 1989, the plaintiff filed with the board an application seeking a "special permit" to replace the panels on two of the three signs. It requested permission to replace panels on one sign that read "Leasing and Rental" with panels reading "Used Cars" and panels on another sign that read "OK Used Cars Barron" with panels displaying the "Geo" emblem. The board denied the application on the ground that, because the signs originally were erected pursuant to variances, they were not a prior nonconforming use under G. L. c. 40A, § 6, par. 1 (1992 ed.). Rather, the board ruled, a modification of the variances was necessary for the plaintiff to obtain relief.

The plaintiff then filed this action in the Land Court appealing the board's decision, under G. L. c. 40A, § 17 (1992 ed.), and G. L. c. 240, § 14A (1992 ed.), naming the board, individual members of the board, and the town as defendants. Shortly thereafter, the plaintiff applied for and promptly was granted a modification of its variances allowing it to change the sign panels. The plaintiff nonetheless continued this action. The plaintiff waived the counts brought under G. L. c. 40A, § 17, and filed a motion for summary judgment on the count under G. L. c. 240, § 14A. After briefing and a hearing, the Land Court judge granted the motion and entered a decision in favor of the plaintiff on July 1, 1992. The defendants filed timely notice of appeal on July 16, 1992. We transferred the case here on our own motion. We affirm the decision of the Land Court.

A. *Mootness.* The defendants argue that, because the plaintiff was granted the variances, it is no longer an aggrieved party under G. L. c. 40A, § 17, and the case is moot. See *Matter of Sturtz*, 410 Mass. 58, 59 (1991), quoting *Metros* v. *Secretary of the Commonwealth*, 396 Mass. 156, 159 (1985) ("It is the general rule that courts decide

to be maintained, provided that no such sign is enlarged, redesigned, or altered in any way, including repainting in a different color, except to conform to the requirements of this by-law."

only actual controversies. We follow that rule, and normally we do not decide moot cases").

The case is not moot. The action seeks relief as to the applicability of the by-law, pursuant to G. L. c. 240, § 14A.[4] A present, actual dispute is not required under G. L. c. 240, § 14A. See *Gage* v. *Egremont*, 409 Mass. 345, 346 n.2 (1991) ("a landowner is entitled to a decision on the applicability of zoning provisions on her land without regard to the existence of a controversy or the right otherwise to declaratory relief"). As a landowner, the plaintiff has the right to request a judicial determination of land use rights under the zoning by-law. See *id.*; *Sturges* v. *Chilmark*, 380 Mass. 246, 249 (1980); *Addison-Wesley Publishing Co.* v. *Reading*, 354 Mass. 181, 185 (1968). Thus, the plaintiff's request that the Land Court judge determine its right to change the signs in the face of the new zoning by-law, as applied by the board, is not moot and is a proper subject for judicial determination.[5]

---

[4]General Laws c. 240, § 14A (1992 ed.), provides, in relevant part: "The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation . . . which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration [or] repair of structures thereon or otherwise as set forth in such petition. . . . The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

[5]The defendants argue that, because the proper procedure for the plaintiff to secure relief was a modification of a variance, the by-law is not implicated and G. L. c. 240, § 14A, therefore does not apply. The plaintiff essentially asked the court "for a determination of the extent to which . . . [the by-law] . . . affects a proposed use . . . of [the] land by the . . . alteration . . . of [the signs] thereon . . . ." G. L. c. 240, § 14A. Whether a special permit, finding by the relevant agency, modification of a variance or none of these is necessary to alter the signs is central to this determination.

B. *Necessity of variance modification.* The central issue is whether the signs were prior nonconforming uses or structures. A prior nonconforming use is a use that had been allowed as a matter of right under the prior zoning by-laws, but is not allowed under a new by-law. See G. L. c. 40A, § 6; *Shrewsbury Edgemere Assocs. Ltd. Partnership* v. *Board of Appeals of Shrewsbury,* 409 Mass. 317, 320-321 (1991). This is distinct from a use permitted by a variance. Such a use cannot be a prior nonconforming use because, by definition, a variance was required and it therefore was not allowed as a matter of right. See *Mendes* v. *Board of Appeals of Barnstable,* 28 Mass. App. Ct. 527, 531 (1990) ("It would be anomalous if a variance, by its nature sparingly granted, functioned as a launching pad for expansion as a nonconforming use" [footnote omitted]).

The defendants argue that, because variances were necessary for the erection of the signs, the signs could not be prior nonconforming uses, and the proposed changes could only be effected through a modification of the variances. The Land Court judge reasoned that, because, at the time of their erection, the signs conformed to the applicable zoning by-laws in all respects except for their location on the property, the variances only concerned locations. In all other respects, the signs were prior nonconforming uses. Because the changes sought by the plaintiff did not relate to the 1969 and 1972 variances, the judge ruled, they did not require a modification of those variances. The defendants argue that, because the signs would not have been permitted in the absence of the variances, the changes were related and incident to the variances and could only be made on a modification thereof.

The town read the scope of the variances too broadly. While the signs were erected and maintained pursuant to the variances, the variances only addressed their location.[6] The

---

[6]The 1969 variance was "to erect two signs . . . closer to the street line than is permitted . . . ." The plan on which the variance was granted identified the signs as the "used car sign" and the "product sign." The variance did not describe any characteristics of the signs and did not impose any conditions. The 1972 variance was "to erect a sign . . . closer to

variances did not address, and were not conditioned on, the content or any other feature or quality of the signs. The use of the land for the display of signs and the physical characteristics of the signs were allowed as a matter of right at the time the signs were erected. Thus, the Land Court judge was correct in concluding that, in all respects except for their location, the signs were lawful, pre-existing nonconforming uses and that the changes to them did not require a modification of the variances.[7]

C. *Protection as prior nonconforming use.* As prior nonconforming uses, the signs and changes to them are governed by G. L. c. 40A, § 6.[8] Under this section, a by-law does not apply to a prior nonconforming use or structure, but does apply to "any change or substantial extension of such use . . . , any reconstruction, extension or structural change of such structure and [ ] any alteration of a structure . . . to

---

the street side line than is permitted . . . ." It was granted "subject to the condition that said sign shall be erected [30 feet] or more from the street line . . . ." No other conditions were imposed. The variance did describe the sign.

[7]The Land Court judge found and ruled that, "to the extent that []§ 25.7.12 [of the by-law] requires a variance to merely change a sign's message, it is not a reasonable time, place or manner control on otherwise protected commercial speech." Because we hold that a variance is not necessary to change the sign panels, we need not reach the constitutional issue.

[8]General Laws c. 40A, § 6 (1992 ed.), provides, in relevant part: "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun . . . before the first publication of notice of the public hearing on such ordinance or by-law . . . but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent . . . . Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood. . . ."

provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent." *Id.* The Land Court judge found that the changes consisted "only of changing the commercial message conveyed by each sign and entail no reconstruction, extension, structural change or alteration of the use or structures to provide for a use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent." The judge concluded that, "because the proposed changes do not cross the substantiality thresholds of G. L. c. 40A, § 6, par. 1, first sentence, a special permit or 'finding' under the second sentence was not required."[9] We agree.

The change of the sign panels does not take the signs out of G. L. c. 40A, § 6's protection for prior nonconforming uses because they constitute neither: (1) a "change or substantial extension" of the use, (2) a "reconstruction, extension or structural change" of the structures, nor (3) an alteration "of the structure[s] . . . to provide for [their] use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent." G. L. c. 40A, § 6.

First, the change of sign panels does not constitute a "change or substantial extension," as determined by the three-part test enunciated in *Bridgewater* v. *Chuckran*, 351 Mass. 20 (1966). See *Derby Ref. Co.* v. *Chelsea*, 407 Mass. 703, 711-712 (1990); *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 212 (1982). We inquire: (1) "Whether the [current] use reflects the 'nature and purpose' of the use prevailing when the zoning by-law took effect"; (2) "Whether there is a difference in the quality or character, as well as the degree, of use"; and

---

[9]The defendants argue that substantiality does not apply to all changes to prior nonconforming uses. We think the judge used the term "substantiality thresholds" to refer to the requirements for a change to a nonconforming use to be denied the protections of G. L. c. 40A, § 6. See *infra* at 410. As discussed below, the replacement of the panels does not qualify as such a "change." See *infra* at 412.

(3) "Whether the current use is 'different in kind in its effect on the neighborhood.'" *Bridgewater, supra* at 23. See, e.g., *Derby Ref. Co., supra* at 712; *Cape Resort Hotels, Inc., supra* at 212.

The current use reflects the "nature and purpose" of the use at the time the by-law took effect. The use remains advertising automotive goods and services available on the premises. The change in the panels and specific products advertised did not change the nature and purpose of the use. See *Derby Ref. Co., supra* at 713 (nature and purpose of use, "bulk deliveries by ocean-going vessels, bulk tank storage and wholesale distribution," unchanged despite the fact that the product was changed from fuel to liquid asphalt and the facilities were altered to allow for this change). Compare *Cape Resort Hotels, Inc., supra* (change from resort hotel for older customers to entertainment complex catering to young nonguests); *Jasper* v. *Michael A. Dolan, Inc.,* 355 Mass. 17, 24 (1968) (change from food store that sold beer and wine to package liquor store). There was no change in the quality, character or degree of use. The changes to the signs were "ordinarily and reasonably adapted" to the unchanged use. See *Derby Ref. Co., supra* at 714. The new panels simply reflect the changed product line. Where, as here, nothing suggests that changes, which are reasonably adapted to the prior use, are extraordinary or unreasonable or change the fundamental nature of the original enterprise, a judge could conclude that this part of the test is satisfied. See *id.* Finally, there is no evidence that the changes in the sign panels will create a different effect on the neighborhood.

Second, there has been no reconstruction, extension or structural change of the signs. The changes were only of the panels. Such minor changes do not remove the signs from the protection of G. L. c. 40A, § 6. See *Derby Ref. Co., supra* (changes to liquid storage facility, including changing the product stored, installing a heating system to heat storage tanks and pipes, insulating the exteriors of the tanks and adding scales to truck loading docks); *Crawford* v. *Building Inspector of Barnstable,* 356 Mass. 174, 176-178 (1969) (en-

closing outside porch and removing external stairs; decided under prior G. L. c. 40A, § 5).

Third, the changes do not constitute an "alteration of a structure . . . to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent." As discussed above, the purpose, advertising goods and services available on the premises, has not changed. Neither the manner nor the extent of the advertising have changed.

Thus, the changes to the sign panels do not remove the signs from the protection for prior nonconforming uses of G. L. c. 40A, § 6. As prior nonconforming uses, the signs with their new panels are excepted from the new zoning by-law. The plaintiff is permitted, as a matter of right, to change the panels.

The by-law provision that a nonconforming sign cannot be maintained if it is "altered in any way . . . except to conform to the requirements of [the] by-law" does not affect this right. By-law, § 25.7.12. A town, in its zoning by-law, may regulate or forbid changes in nonconforming uses. *Blasco* v. *Board of Appeals of Winchendon*, 31 Mass. App. Ct. 32, 39 (1991). See *Strazzulla* v. *Building Inspector of Wellesley*, 357 Mass. 694, 697 (1970), appeal dismissed, cert. denied, 400 U.S. 1004 (1971) (recognizing town's power to specify conditions for and limitations on changes in nonconforming signs). However, the changes in this case did not constitute changes in nonconforming uses.

The right of municipalities to regulate or prohibit changes to prior nonconforming uses arises under the second sentence of G. L. c. 40A, § 6, par. 1. *Blasco, supra* at 38-39. The statute provides that "nonconforming structures or uses may be extended or altered" if the proper local authority makes a finding "that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood." G. L. c. 40A, § 6. We must interpret this provision in the context of the statute as a whole. See *Telesetsky* v. *Wight*, 395 Mass. 868, 873 (1985); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting*

*Comm'n*, 394 Mass. 233, 240 (1985). In order to read the provision consistently with the first sentence of the statute, we think that the right to regulate changes is limited to the changes, extensions, reconstructions and alterations to prior nonconforming uses and structures to which, under the first sentence of G. L. c. 40A, § 6, zoning ordinances and by-laws apply. Our conclusion is consistent with prior decisions allowing towns to regulate or forbid changes in preexisting nonconforming uses, as the changes in those cases were statutorily excluded from prior nonconforming use status. See *Strazzulla, supra* at 695 (reconstruction of sign); *Blasco, supra* at 33 (conversion of gravel removal operation to demolition landfill). Because the changes of the sign panels do not constitute a change, extension, reconstruction or alteration of a prior nonconforming use or structure to which, under the first sentence of G. L. c. 40A, § 6, zoning ordinances and by-laws apply, see *supra* at 410, the town could not regulate or prohibit them.

*Judgment affirmed.*