Muse, Christopher J., J.
The plaintiffs, Vincent and Elizabeth Dimilla, appeal from a decision of the Town of Bourne Planning Board denying a special permit for a backlot division. The claim is being reviewed pursuant to G.L.c. 40A, §17. The case was scheduled for a de novo trial. However, the parties stipulated to the following facts (which the court has accepted as proven) and presented stipulated exhibits, which the court admitted. Following extensive argument by counsel, and further review of the evidence, the court finds that the Board’s decision is based on a legally untenable ground, is unreasonable, arbitrary and capricious, and is therefore ANNULLED.
STATEMENT OF AGREED AND STIPULATED FACTS
1. Plaintiffs are the owners of and reside at the real property located at 184 Williston Road, Sagamore Beach, Barnstable County, MA 02562 shown on Map 7.1 of the Town of Bourne Assessors as Parcel 33.
2. The Town of Bourne Planning Board (the “Board”) has its offices at Bourne Town Hall, 24 Perry Ave., Buzzards Bay, Barnstable County, Massachusetts 02532.
3. The Board members are all residents of the town of Bourne.
4. The plaintiffs’ property directly abuts Williston Road for a total linear distance of two hundred (200) *159 feet and is the location of a single-family dwelling occupied by the plaintiffs as their home.
5. The plaintiffs’ property is comprised of 126,037 square feet of land or approximately 2.84 acres.
6. Plaintiffs’ land is located in the R-40 Zoning District within the Town of Bourne.
7. On or about October 9, 2007, the plaintiffs caused their application and accompanying plan for a Special Permit pursuant to Section 2490 of the Town of Bourne Zoning Bylaw (the “Bylaw”) for a Backlot Division to be duly filed in accordance with the provisions of G.L.c. 40A and the Bylaw.
8. On or about October 16, 2007, Dody Adkins-Peny, Engineering/Planning Technician for the Town, reviewed plaintiffs’ plan in accordance with the express provisions and requirements set forth in §§2491 through 2498 of the Bylaw and forwarded her report to the Board.
9. Ms. Dody-Periy determined that the plaintiffs’ plan complied with all of the requirements set forth in §§2491 through 2498 and other relevant provisions of the Bylaw without exception and so informed the Board by writing dated October 16, 2007.
10. On November 8, 2007, the Board held a public hearing on the plaintiffs’ application for a Special Permit pursuant to §2940 of the Bylaw.
11. Although the Meeting Agenda posted by the Board informed the plaintiffs that their application would be the fourth order of business before the Board, the plaintiffs observed that the hearing on their application had commenced prior to their arrival, moments after the 7 P.M. start time for the hearing.
12. Notwithstanding that the plaintiffs’ plan complied with all of the requirements of the Bylaw, the Board voted 3 in favor and 3 opposed to deny the plaintiffs’ application.
13. On November 9, 2007, the Board filed its Decision with the Town Clerk for the Town of Bourne.
14. On November 19, 2007, the plaintiffs filed their Complaint pursuant to G.L.c. 40A, §17 appealing the Board’s denial of their application.
15. By order dated April 8, 2008, this Court allowed the plaintiffs to amend their Complaint to add a Count II challenging the sufficiency of the Board’s written Decision and praying that the Court declare that plaintiffs’ application be deemed as constructively granted.
16. On or about July 21, 2008, plaintiffs filed their Motion for Summary Judgment accompanied by the Board’s Opposition and Cross Motion for Summary Judgment.
17. Plaintiffs’ Motion and the Board’s Cross Motion sought Summary Judgment on Count II of the Amended Complaint, the plaintiffs requesting a declaration of constructive grant and the Board requesting Judgment dismissing Count II as the plaintiffs were not entitled to a declaration of constructive grant.
18. By Decision dated December 23, 2008, this Court denied plaintiffs’ Motion and granted the Board’s Cross Motion with the result that Count II of the Amended Complaint was dismissed.
19. In its Decision, the Court (Rufo, J.) stated “Moreover, based on a complete review of the summary judgment record, together with the facts and issues raised by the parties during the motion hearing, this court recommends that the case be remanded to the Bourne Planning Board for further administrative review."
20. The Board followed the recommendation of the Court and scheduled the matter for further hearing and review on February 26, 2009 at which time the plaintiffs, their counsel and permitting consultant appeared and presented the plan anew.
21. By Decision filed with the Bourne Town Clerk on February 27, 2009 the Board voted 4 in favor and 4 opposed “. . . to Deny the Remand of Special Permit #24-2007 for 184 Williston Road, Sagamore Beach, Ma. 02562 ...” A true copy of that Decision is attached to the Complaint on remand as Exhibit B.
22. Since the town of Bourne Planning Board consists of 9 members, G.L.c. 40A requires a vote of at least 6 members in favor of an application for a special permit in order for the applicant to prevail. Accordingly, the plaintiffs’ application was denied after remand.
23. As one reason for its denial, the Board stated that there was not 35 feet between the existing driveway and the edge of the property as shown on the plaintiffs’ plan as required by §2491 of the Bylaw.
24. This reason was advanced even though the plaintiffs’ surveyor had certified that the required 35-foot distance was in fact met and the Town’s Engineering/Planning Technician Dody Adkins-Perry by memorandum to the Board dated October 16,2007, prior to the initial hearing on the matter, had determined that the plan did show the requisite 35-foot separation.
25. The second reason advanced by the Board for its denial was that, even though the lot resulting, if the application were approved, would be the location for one single-family dwelling situated on 2 acres of land on a heavily wooded lot with a single driveway, the design and location of which complied with the requirements of the Bylaw, “the Board has concerns with the reduction of privacy and feels a large impact to the natural environment would occur at this location.”
26. Finally, as its only other reason for denial, the Board “feels the project’s intent is to circumvent the Subdivision Control Law” even though Back Lot Subdivisions are expressly authorized by the Bylaw; the plan complies with eveiy requirement of the Bylaw; the *160 Bourne Fire Chief corresponded with the Board that the proposed driveway was adequate for access to and from the lot by emergency vehicles; and his successor apparent (presently a member of the Board) voted in favor of the plaintiffs’ application.
27. The plaintiffs, as applicants, are persons aggrieved by the Board’s Decision within the meaning of G.L.c. 40A, §17.
28. Plaintiffs’ land, presently configured as one (1) lot, has 200 feet of frontage on Williston Road, a public way in the Town of Bourne. The proposed division would result in two (2) lots with 164.99 and 35.01 feet of frontage on Williston Road, thus meeting the requirements of Sections 2490 and 2491 of the Town of Bourne Zoning Bylaw. The land is not held in common ownership with any contiguous land; nor had it been within the five years preceding the plaintiffs’ application.
29. The land is located in the R-40 zoning district which requires a lot area of 40,000 square feet. Plaintiffs’ lots, as divided, would contain 40,768.3 and 85,268.7 square feet as required by §2492 of the Zoning Bylaw for the requested division.
30. Plaintiffs’ lots, when divided, are capable of containing a square with sides equal to normally required frontage as required by §2493 of the Zoning Bylaw.
31. Plaintiffs’ lot, now and when divided, will meet all other requirements specified in §2400 Dimensional Regulations.
32. The access strip for Plaintiffs’ lot showing 35.01 feet of frontage does not abut another lot which has less frontage than is normally required, or which is or was in the same ownership at the time of Plaintiffs’ application or within five (5) years preceding the date of Plaintiffs’ application as required by §2495 of the Bylaw.
33. Plaintiffs’ lots, now and when divided, will result in no greater hazard to egress owing to grade and visibility limitations as the proposed lots are of similar grade and vegetation typical of the existing lot and other lots generally within the neighborhood and can be controlled by trimming vegetation, all as provided in §2496 of the Bylaw.
34. The lot division will not authorize any activity regulated pursuant to the Massachusetts Endangered Species Act. Any required filing would be determined only at the time of application for a Building Permit.
35. Additionally, because of the size of the lots and the ability to preserve existing vegetation, there would be no more reduction of privacy or damage to the natural environment due to home construction than would be expected from construction on any other lot within the vicinity. Additionally, there appear to be no unusual topographical or other conditions which would impede the provision of utilities to the land.
36.Both before and after the plaintiffs’ application, the Board had never denied any other application for a Back Lot subdivision where the plans met the specific criteria of the Bylaw.
DISCUSSION
OnaG.L.c. 41A, §17 appeal, review of the municipal board’s decision, while based upon de novo fact finding, is nonetheless “circumscribed . . . [That decision] ‘cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.’ ” Davis v. Zoning Bd. of Chatham, 52 Mass.App.Ct. 349, 355 (2001), quoting Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999). “A decision is not arbitrary and capricious unless there is no ground which ‘reasonable [persons] might deem proper’ to support it.” T.D.J. Dev. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128 (1994), quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952).[3]
The Board’s primary objection to the plaintiffs’ proposed lot division rested with its claim that the thirty-five-foot frontage requirement was not met, and that the proposed lot configuration provided, at best, superficial compliance with the minimum frontage requirement of the Bylaw. The Board further found that the plaintiffs’ plan was intended to circumvent the subdivision control law. And lastly, the plan caused a reduction of privacy and an impact on the natural environment.
The plan shows a thirty-five-foot boundary line on Williston Road. A visual review of the plan by the court shows a curve of the front of the proposed driveway, approximately ten to fifteen feet from the street, when the driveway continues for the remainder of its length with a uniform width of twenty feet.[4] The court will therefore focus its consideration of the Board’s application and interpretation of the “frontage” requirement, followed by a review of the Board’s concern for a “reduction in privacy” and impact on the natural environment if the permit is approved.
I. Frontage
The Planning Board, in its decision, stated that plaintiffs’ proposed lot did not have the necessary thirty-five feet of frontage. The Zoning Bylaw defines frontage as “(t]hat portion of a lot fronting upon and having access to a street. Measured continuously along one street line between side lot lines.”[5] With respect to back lot divisions the bylaw further requires that “[t]he lot having reduced frontage must have frontage of at least 35 feet.”[6] The Town argues, without cite to authority or even precedent in Bourne, that the thirty-five foot requirement must continue the length of the proposed driveway. The plaintiffs, as expected, have a contrary view of the Bylaw, which is that the entrance of the driveway must have at least thirty-five feet frontage, with no specific mandate for the remainder of it. The Court agrees.
*161 The Bylaw first defines frontage as, “[t]hat portion of a lot fronting upon and having access to a street.” The bylaw is clearly concerned with the “portion of the lot” immediately contiguous to the line of the street. The next sentence, “[m]easured continuously along one street line between side lot lines,” provides an additional metric, which clearly indicates that the frontage requirement must begin and end between property lot lines, and further, that the minimum frontage must be continuous. The court relies upon the plain and unambiguous language of the Bylaw, without resort to any rules of construction, and interprets the Bylaw to require an unbroken property line along the street measuring at least 35 feet. According to the party’s stipulated facts, the plaintiffs’ proposed lot satisfies this requirement. Furthermore, the Planning Technician to the Planning Board, by letter dated October 16, 2007, states the resulting lot satisfies the requirement for frontage. The Board’s reasoning that the Plaintiffs’ lot did not satisfy the Bylaw’s frontage requirement is legally untenable, arbitrary and capricious.
II. Intent to Circumvent Bylaws
As an additional reason for denial of the special permit the board asserted that it “feels the project’s intent is to circumvent the Subdivision Control Law.”[7] Town Counsel vigorously asserted the duty and obligation of the Town to assure public safety to and from any area of the town, and correctly cited to the Subdivision Control Law, which was enacted for the purpose of “protecting the safety, convenience, and welfare of the inhabitants of the cities and towns in which it is . . . put in effect.”[8] The Supreme Judicial Court has expressed that, “a principal object of the law is to ensure efficient vehicular access to each lot in a subdivision, for safety, convenience, and welfare depend critically on that factor.” Gifford v. Planning Bd. of Nantucket 376 Mass. 801 (1978).
The proposed single-lot division herein is quantitatively, and qualitatively different from the one at issue in Gifford. In Gifford, the court reviewed a forty-plus lot subdivision on Nantucket, which had frontage on a public road measuring the required seventy-five feet. Most of the planned lots had access to the street through individual driveways which zig-zagged in what the court described to be “rat tail” formation, often at acute angles, and narrowing at times to widths of seven feet. That police and emergency vehicles, and fire department apparatus would have a difficult or impossible journey through the proposed maze was obvious, and the plan was clearly at odds with the intent of the Subdivision Control Law.
There is no such public safety concern raised in the present case. First, contrasting the Board’s wholly conclusoiy statement of concern, is the opinion of the town’s Fire Chief who indicated that the proposed driveway was adequate for access to and from the lot. Furthermore, the proposed lot complies with the Commonwealth’s minimum standard of 20 feet for frontage as set out in G.L.c. 41, §81L. The proposed lot therefore does not subvert the intent of the Subdivision Control Law, and that finding by the Board was legally untenable, arbitrary and capricious.[9]
III. Privacy and Natural Environment
Finally, the Board stated that it “has concerns with the reduction of privacy and feels a large impact to the natural environment would occur at this location.”[10] The Board offered no factual basis for this conclusion, and the reasoning is at odds with the facts agreed upon by the parties.[11] The Board did not identify with particularity any property owners who would be negatively affected by the back lot division, nor did they indicate how the division would cause a reduction in privacy to such owners. The Board’s conclusion represents a visceral reaction with no reference to any identifiable data, facts, or observations that would support their claim. The conclusion is further at odds with statements contained within the Town Planning Technician’s letter to the Planning Board, who was silent as to any such negative impact. The Court therefore finds that the Board’s third justification for denial of the permit lacks factual support, and was legally untenable, arbitrary and capricious.
For the foregoing reasons, the court finds that the Planning Board’s denial of the special permit was arbitrary, capricious, and legally untenable. The decision is annulled. As the matter was previously remanded to the Board, further remand would only “delay an inevitable result.” Wendy’s Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica SJC-10354, July 24, 2009, the Board is ordered to issue the special permit.
ORDER
Based on the foregoing, the appeal of the Plaintiffs is ALLOWED, the decision of the Board is ANNULLED, and the Board shall issue the Special Permit without undue delay.

Nile court is cognizant that a landowner generally does not have the absolute right to a special permit. See Strazzulla v. Building Inspector of Wellesley, 357 Mass. 694, 698 (1970).

The parties did not dispute the court’s approximation at the hearing.

Town of Bourne Zoning Bylaw, §V, p. 68.

Town of Bourne Zoning Bylaw, §2491.

Statement of Agreed and Stipulated Facts, 26.

G.L.c. 41, §81M.

 Gifford spawned dozens of cases noted by Kass J. in Gates v. Planning Bd. ofDighton, 48 Mass.App.Ct. 394 (2000), which raised the question “whether access to a public way is illu-soiy.” This case provides a compendium of references to pre- and post-Gifford cases, which the court divided:
Two categories of access on public ways come into focus out of this decisional history. There is the “could be better *162 but manageable” categoiy and the “illusory" categoiy. The first categoiy warrants a sec. 8 IP endorsement; the second does not.
Gates, 48 Mass.App.Ct. at 399.
The Gates subdivision was found to be “an attempted evasion of the duty to comply with the regulations of the planning board,” citing Gifford, 376 Mass. at 808, and the “frontage alongTremont Street does not afford practical, safe, and efficient access . . .” Gates, 48 Mass.App.Ct. at 401.
The present case is one which falls into the first categoiy. See Hutchinson v. Planning Bd. of Hingham, 23 Mass.App. 416, 421 (Board required to approve 20-21 foot wide public way in subdivision), and Galitano v. Board of Survey and Planning of Waltham, 10 Mass.App.Ct. 269, 273 (1980).

See Statement of Agreed and Stipulated Facts, 25.

See Statement of Agreed and Stipulated Facts, 25, 34, 35.